SHORTESS, Judge.
In 1975, Browning-Ferris Industries Chemical Services, Inc., (BFI) initiated procedures to convert a well, originally drilled to produce oil or gas, for use as a hazardous waste disposal well. BFI received what it contends was a proper permit and began operations. In 1985 the Legislature amended LSA-R.S. 30:4.1 C to provide that no new permits for previously unpermitted hazardous waste disposal wells were to be issued. The amendment became effective July 16, 1985. On October 24, 1985, Herbert W. Thompson, Commissioner of Conservation and defendant herein, issued Order No. WD 85-10 which approved “the continued operation” of the well.
The Calcasieu Parish Police Jury (plaintiff) brought suit seeking a writ of mandamus compelling defendant to revoke the approval for the well or to show cause to the contrary. CECOS International, Inc., the operator of the well, and BFI (inter-venors) intervened to unite with defendant against the issuance of the writ. The trial court ruled that the well had been previously permitted and rendered judgment denying the writ. Plaintiff appeals.
Plaintiffs fundamental contention is that the disposal well (a “Class I well”) was not permitted prior to July 16, 1985, the effective date of the 1985 amendment to LSA-R.S. 30:4.1 C. If that position were correct, then LSA-R.S. 30:4.1 C would prohibit the granting of the permit, and the writ of mandamus should have issued.[1]
*757 In support of its argument, plaintiff points to the testimony of James H. Welsh, Director of the Injection and Mining Division of the Office of Conservation. Welsh was asked if, prior to October 24, 1985, any permits for the disposal well had been issued pursuant to Statewide Order No. 29-N-l, which in 1982 imposed certain guidelines governing the regulation and operation of such wells. He replied that none had been issued. From this response plaintiff concludes that “no permit had previously issued.” We disagree. Welsh’s answer indicates only that no permit under Order No. 29-N-l had been issued before October 24, 1985; it does not exclude the possibility that intervenors might have obtained other permits.
In fact, taken as a whole, Welsh’s testimony demonstrates that the disposal well was permitted before LSA-R.S. 30:4.1 C became effective.[2] Welsh testified that Order No. WD 85-10 “repermits the BFI-CE-COS Willow Springs waste disposal well and allows them to continue to inject hazardous waste” (emphasis supplied). He described the applications submitted in 1982 and 1984 pursuant to Order No. 27-N-l as applications “for a repermit.” After Welsh outlined the permit process in effect prior to 1977, defendant’s counsel asked, “[w]as this done in the BFI-CECOS well,” and Welsh replied, “Yes, sir.” When asked the date when the well was originally permitted, he answered, “November 19, 1975. That’s the date of approval from the Office of Conservation.” Intervenors had secured various amendments to the original permit; it was Welsh’s view that thesé amendments modified an existing permit.
All parties jointly submitted documentary evidence and stipulated to its authenticity. That evidence supports defendant’s position that the well was permitted before the critical July 16, 1985, date. We will examine several of these documents to illustrate:
(1)On November 19, 1975, Robert D. Bates, Chief Conservation Geologist for the Department of Conservation, wrote a letter indicating that, subject to several conditions, the application to convert the well for use as a waste disposal facility was approved. It was this letter that, according to Welsh, granted the Department of Conservation’s approval to the conversion.
(2) On February 2,1976, Charles E. Bishop, Jr., of the Louisiana Health and Human Resources Administration wrote to BFI regarding his final review of the proposed conversion. He stated that the plan submitted by BFI was in “compliance with our requirements for protecting the public health and the environment” and that “[ajpproval is given herewith.”
(3) An Application to Amend Permit to Drill for Minerals was approved on July 23, 1976. This permit was issued to BFI and covered the disposal well (Serial Number 070042) in question here.
(4) On July 26, 1976, an Amended Permit to Drill for Minerals was issued changing the well originally named “Gus and Edna Anderson” to “Disposal Well,” Serial Number 070042. This permit was signed by R.T. Sutton, Commissioner of Conservation.
(5) On February 7,1977, Robert D. Bates wrote a letter indicating that, after reviewing the completion program for the well and finding it in compliance with all requirements, his office approved the completion program for the conversion of the Gus and Edna Anderson well to Waste Disposal Well No. 1.
(6) Sometime before October 15, 1984, the Office of Conservation issued a Fact Sheet which summarized the facts and issues relevant to the application for permit required by Order No. 29-N-l. In that Fact Sheet is the following history of official approval for the disposal operation:
The Health and Human Resource Division (HHR), ruling agency at that time, received an application from Browning-Ferris Chemical Services in 1975 to re-enter the plugged well and convert it to waste disposal. After consultation with the Office of Conservation-Oil and Gas Geological Division in November of 1975, approval was granted by HHR in Decern- *758 ber of 1975 and BPI recompleted the well for disposal on August 3, 1976 in the Miocene Sands at 4490-4610 feet_ Since the original completion this well has been operated in compliance with all rules and regulations promulgated by the Office of Conservation.
(7) On February 5,1985, Welsh approved an Application to Amend Permit to Drill for Minerals for this disposal well.
(8) The Commissioner of Conservation issued Order No. WD 85-10, effective October 24, 1985, which approved the application made pursuant to Order No. 29-N-l. That Order approved the “continued” operation of the disposal well.
Based upon our review of the entire record, we conclude that the trial court was not clearly wrong in finding that the well had been granted a permit before July 16, 1985.
Plaintiff also advances the argument that any permit the intervenors might have obtained lapsed because the application made pursuant to Order No. 29-N-l was not timely. Order No. 29-N-l required that applications for permits be made within six months of the effective date of the Underground Injection Control program. Plaintiff argues that the program became effective on April 23, 1982, that the BFI application was untimely because it was not submitted until November 1, 1982, and that, therefore, any permit the well might have had was rendered null and void. As authority for this sanction plaintiff cites 40 CFR § 114.21.
That section of the Code of. Federal Regulations is entitled “Authorization of Underground Injection by Rule” and sets out the requirements for this type of authorization. Section 20.05 of Order No. 29-N-l generally tracks 40 CFR § 144.21. Welsh testified at one point that he thought “it was recognized that the well was permitted under rule by the Office of Conservation in 1982.” He also testified that the Commissioner did not revoke or dissolve any permits after the issuance of Order No. 29-N-1. There is no documentary evidence that intervenors’ disposal operation at this well was authorized “by rule” rather than by the permit process. There is no evidence that their applications for permits under Order No. 29-N-l were at the instance of the Commissioner of Conservation as provided by section 20.05B(1) of that Order. There is no suggestion that this facility fits the criteria of section 20.05B(l)(a), (b) or (c). Intervenors’ applications did not request that they be excluded from coverage of the rule, nor did they supply reasons for exclusion from the rule as required by section 20.05B(3). Given these factors, we conclude that the sanction of cancellation of authorization by rule does not apply to this facility.
If the disposal well was not “authorized by rule” and thus not subject to the sanction of section 20.05, is cancellation of the permit the penalty for failure to comply with the time limits of Section 30 of Order No. 29-N-l? Section 30 contains no sanction for those who file late applications for permits. The November 1, 1982, filing by BFI appears not to have concerned the Office of Conservation, for it granted the application for repermit pursuant to Order No. 29-N-l. There is no evidence intimating that the Office of Conservation, the entity which promulgaged the regulations, viewed the earlier-acquired permit as having lapsed because of the filing on November 1, 1982. Evidently, any deficiency caused by the filing on that date was pardoned by the Office of Conservation. Therefore, we find that the filing of the application on November 1, 1982, did not result in the voiding of the permit by which the disposal well operated.
^For these reasons, we hold that the trial court was not clearly wrong in finding that the disposal well was permitted when the 1985 amendment to LSA-R.S. 30:4.1 C became effective. Accordingly, the judgment of that court is affirmed and costs are taxed to plaintiff.
AFFIRMED.
CARTER, J., dissents.

. After the 1985 amendment, LSA-R.S. 30:4.1 C provided as follows:
C. (1) No person shall inject, pump, dispose, or in any manner allow the escape of any hazardous waste into any well or underground strata by way of an injection well without obtaining a permit from the assistant secretary or in violation of any permit issued by the assistant secretary; or violate any rule, regulation, or order of the assistant secretary issued under the authority of this Section.
(2) The assistant secretary shall not issue any new permit for a previously unpermitted Class I well for the disposal of hazardous waste as defined in the comprehensive state hazardous waste control program, provided for in R.S. 30:1135, which previously produced or was drilled for the purpose of producing oil or gas, whether oil or gas was actually produced therein. Where a new permit has been issued for such a Class I well for disposal of hazardous waste, the assistant secretary shall immediately proceed to revoke such permit, giving notice and upon request, an opportunity for the parties to be heard, and set a schedule for the abandonment and closure of the well, in accordance with rules and regulations of the office of conservation. No later than November 15, 1985, the assistant secretary shall order the cessation of injection and issue an order for closure which shall be completed within one hundred twenty days of the order.

. Welsh was called by plaintiff as its own witness.